# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| RTAE HOLDINGS, LLC, RYAN TRIMBERGER, and AARON EBERTOWSKI §§§§ <br><br> v. §§ <br><br> FOCUS INVESTMENT BANKING LLC, FOCUS SECURITIES LLC, and MANAN SHAH §§§§ | CIVIL ACTION NO. 3:24-CV-1829-S |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendants FOCUS Investment Banking LLC, FOCUS Securities LLC, and Manan Shah's Motion to Stay and Compel Arbitration by Special Appearance ("Motion") [ECF No. 5]. The Court has reviewed the Motion, Defendants' Memorandum in Support of the Motion ("Defendants' Brief") [ECF No. 6], Plaintiffs RTAE Holdings, LLC, Ryan Trimberger, and Aaron Ebertowski's Response and Brief in Opposition to the Motion ("Response") [ECF No. 14], Defendants' Reply Brief in Support of the Motion ("Reply") [ECF No. 19], and the applicable law. For the following reasons, the Court **GRANTS** the Motion with respect to Defendant FOCUS Investment Banking LLC ("FOCUS Investment") only.

### I. BACKGROUND

This business dispute arises out of agreements related to the sale of a company. In 2020, Plaintiffs Ryan Trimberger and Aaron Ebertowski co-owned Stratum Technology Management, LLC. Pls.' Original Pet. ("Petition") [ECF No. 1-6] ¶ 12. In September of that year, Trimberger contemplated selling Stratum and engaged Defendants Manan Shah, FOCUS Investment, and FOCUS Securities LLC ("FOCUS Securities") to serve as Stratum's exclusive financial advisor for the sale. *Id.* at 1, ¶¶ 12-13. In furtherance of that engagement, FOCUS Investment and Stratum

entered into a letter agreement ("Agreement"). *See* App. to Resp. ("Response Appendix") [ECF No. 15] 3-10. Douglas E. Rodgers signed the Agreement on behalf of FOCUS Investment, and Trimberger signed on behalf of Stratum. *Id.* at 10. Pursuant to the Agreement, FOCUS Investment agreed to act as Stratum's "exclusive financial advisor" in connection with a sale or other transfer of Stratum. *Id.* at 3, 5. The Agreement included an arbitration clause providing that "[a]ny dispute, claim or controversy arising out of or relating to this [Agreement] or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in Wilmington, Delaware before one arbitrator." *Id.* at 8. After the Agreement was signed, Stratum's ownership was reorganized so that Plaintiff RTAE Holdings, LLC, wholly owned Stratum. Pet. ¶ 15.

In July 2021, Stratum was about to close on a transaction with a buyer when "a prior suitor of Stratum" poached Stratum's Chief Technology Officer. *Id.* ¶ 16. Defendants allegedly introduced Stratum to the poacher. *Id.* ¶ 17. Stratum disclosed the loss of its Chief Technology Officer to the buyer, and the buyer terminated negotiations. *Id.* ¶ 18. According to Plaintiffs, Stratum later learned that Shah had agreed to a contractual provision with the poacher that permitted that entity to hire away Stratum employees. *Id.* ¶ 19.

On December 31, 2021, RTAE sold Stratum to Open Systems Technologies DE, LLC ("OST").[1] *Id.* ¶ 22. The OST deal was less valuable than the previous deal had been. *Id.* ¶ 23. And OST allegedly defrauded Plaintiffs and violated their contractual agreements. *Id.* ¶ 24. Plaintiffs later learned that Defendants allegedly "played a bigger role in the fraud than was previously understood." *Id.* ¶ 29. Among other things, Plaintiffs claim that Defendants entered into a buy-side agreement with OST's parent company, Koniag, Inc., that had many similarities to Defendants'

---

[1] OST has since been renamed Vervint, LLC. *Id.* ¶ 22.

sell-side agreement with Stratum. *Id.* ¶¶ 42-44. That agreement included a provision stating that Koniag would not be liable for paying FOCUS Investment's "success fee" if the seller was a FOCUS Investment client. *Id.* ¶¶ 46-51. Defendants allegedly did not disclose this information to Plaintiffs. *Id.* ¶ 52. Shah told Koniag that FOCUS Investment was representing Stratum and "encouraged OST to make an offer on Stratum." *Id.* ¶ 62. When OST made the offer, Shah "tried to convince Stratum to select OST." *Id.* ¶ 63. According to Plaintiffs, Defendants did not disclose the extent of their relationship with Koniag, and Stratum did not waive this alleged conflict of interest. *Id.* ¶¶ 64-65.

Plaintiffs allege that OST's purchase of Stratum "provided significant value to OST other than through Stratum's cloud services offerings." *Id.* ¶¶ 74-79. And according to Plaintiffs, Defendants and OST knew this fact. *Id.* ¶ 74. By contrast, Stratum allegedly was unaware of these benefits and either would not have sold to OST or would not have sold to OST on the terms negotiated by Defendants had it known. *Id.* ¶¶ 80-81.

As a result of the foregoing, Plaintiffs brought suit, asserting causes of action for breach of fiduciary duty, negligence, gross negligence, fraud, negligent misrepresentation, equitable fraud, and aiding and abetting fraud. *Id.* ¶¶ 83-115. Defendants moved to compel arbitration pursuant to the Agreement. Mot. 1-2.

## II. LEGAL STANDARD

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., written arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA provides that a party seeking to enforce an arbitration provision may petition the court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* § 4.

Whether to enforce an arbitration agreement involves two analytical steps. "First, the court must determine whether the parties agreed to arbitrate the dispute." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (citation omitted). This first question requires two determinations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (quoting *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538 (5th Cir. 2003)). Second, the court "must consider whether any federal statute or policy renders the claims nonarbitrable." *Id.* (citation omitted). In analyzing these steps, the court may look to "the pleadings and evidence on file." *Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 444 (N.D. Tex. 2019) (citing FED. R. CIV. P. 56(a)).

## III. ANALYSIS

Below, the Court first considers Plaintiffs' objection to the version of the Agreement submitted by Defendants. Next, the Court analyzes whether the arbitration provision is unenforceable because the designated forum is unavailable. With these preliminary issues resolved, the Court then moves on to the traditional analysis governing enforceability of arbitration agreements. Because Plaintiffs do not contend that any federal statute or policy renders their claims nonarbitrable, the Court need only resolve the first question, with its two subparts—whether there is a valid agreement to arbitrate and whether the parties' dispute falls within the scope of that agreement.

### A. Evidentiary Objection

Before turning to the substance of the parties' dispute over arbitration, the Court must briefly address Plaintiffs' contention that Defendants failed to present evidence of an enforceable arbitration agreement because they rely on "an unauthenticated contract." Resp. 10. Whatever the

4

merits of this argument may be, Plaintiffs cured any issue by including a copy of the Agreement in their Appendix that is properly authenticated by the Declaration of Ryan Trimberger. Resp. App. 1-10. Therefore, the Court overrules Plaintiffs' objection.

### *B. Availability of Forum*

Plaintiffs also argue that the Court cannot compel arbitration because the designated forum is unavailable. Resp. 16. According to Plaintiffs, the Agreement requires arbitration to take place in Wilmington, Delaware, and to be administered by JAMS. *Id.* at 17. Plaintiffs contend that JAMS "does not have any arbitrators located in Wilmington[,] Delaware," thus rendering the Court incapable of compelling arbitration. *Id.* at 17-18. Defendants reply that "JAMS directly confirmed they are more than willing and able to accommodate arbitrations in Delaware." Reply 9; *see also* Reply, Ex. C (email from JAMS Practice Manager stating that JAMS "can accommodate a hearing in Delaware").

Where a "forum-selection clause is an 'important' part of the arbitration agreement," courts "need not compel arbitration in a substitute forum if the designated forum becomes unavailable." *PoolRe Ins. Corp. v. Organizational Strategies, Inc.*, 783 F.3d 256, 264 (5th Cir. 2015) (quoting *Ranzy v. Tijerina*, 393 F. App'x 174, 176 (5th Cir. 2010)). Here, however, JAMS has confirmed that the parties' selected forum—Wilmington, Delaware—is available. Therefore, unavailability does not prevent the Court from compelling arbitration. *See Unger v. Celevoke Inc.*, No. 6:09-CV-365-LED-JDL, 2010 WL 11530640, at *6 (E.D. Tex. Oct. 14, 2010) (rejecting challenge to arbitration based on the American Arbitration Association not having a location in Orange County, California, where the Association confirmed in an email that the arbitration could take place in Orange County).

### *C. Valid Agreement to Arbitrate*

Having resolved these preliminary questions, the Court turns to the question of whether to enforce the Agreement's arbitration clause. Ordinarily, the Court must first determine whether there is a valid agreement to arbitrate between the parties. *Will-Drill*, 352 F.3d at 214 (citation omitted). Here, there is no dispute that the Agreement's arbitration provision is valid. But there is also no dispute that no express agreement to arbitrate exists between all Plaintiffs and all Defendants. Only Stratum and FOCUS Investment signed the Agreement. Resp. App. 10. Nevertheless, both the signatory and non-signatory Defendants seek to bind the non-signatory Plaintiffs to the Agreement pursuant to an equitable estoppel theory.

#### *i. Non-Signatory Defendants*

Plaintiffs first argue that Shah and FOCUS Securities cannot compel arbitration with Plaintiffs, who are not parties to the Agreement, because unlike FOCUS Investment, these Defendants are not signatories to the Agreement. Resp. 11. Defendants do not meaningfully respond, stating only in a footnote that "Shah is cc'd on the Agreement[,] and FOCUS Securities . . . is referenced in the Agreement." Reply 4 n.2. Defendants "offer[] no authority for [their] contention that a non-signatory to an arbitration agreement can compel another non-signatory to arbitrate certain claims."[2] *Invista S.À.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 85 (3d Cir. 2010); *see also Gupta v. Lynch*, No. 12-1787, 2013 WL 3187273, at *7 (E.D. La. June 20, 2013) ("[T]here is little, if any, case law that would permit a non-signatory to compel arbitration against another non-signatory." (citation omitted)). And it is unclear to the Court whether Shah and FOCUS Securities intend to compel arbitration, as Defendants argue only that "Plaintiffs fail to explain how the presence of non-signatory co-Defendants would somehow destroy signatory

---

[2] As discussed more thoroughly below, the parties disagree as to whether Delaware or Texas law applies to this dispute. The Court's conclusion here would be the same under either state's law.

[FOCUS Investment's] ability to bind Plaintiffs." Reply 4. Because Defendants have provided no argument or authority supporting Shah and FOCUS Securities' ability to compel arbitration, the Court denies the Motion with respect to these Defendants.

### ii. Non-Signatory Plaintiffs

The parties next dispute whether FOCUS Investment can compel Plaintiffs, who did not sign the Agreement, to arbitration.

### a. Governing Law

"[B]ackground principles of state contract law" apply to questions like "who is bound by [arbitration agreements]." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009); *see also IMA, Inc. v. Columbia Hosp. Med. City at Dall., Subsidiary L.P.*, 1 F.4th 385, 391 (5th Cir. 2021) ("[W]hether a party can compel a non-signatory to arbitrate on equitable grounds is determined by state law." (citation omitted)). Therefore, the Court must first determine whether Delaware or Texas law governs its analysis.

Both Delaware and Texas courts have held that an arbitration agreement may be enforced against a non-signatory under principles of equitable estoppel. *See Fla. Chem. Co. v. Flotek Indus., Inc.*, 262 A.3d 1066, 1074 (Del. Ch. 2021) (citation omitted); *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 609 n.1 (5th Cir. 2016) (citation omitted). And, as relevant here, courts in both states recognize direct benefits estoppel. *See Fairstead Cap. Mgmt. LLC v. Blodgett*, 288 A.3d 729, 755 (Del. Ch. 2023) (citation omitted); *Taylor Morrison of Tex., Inc. v. Ha*, 660 S.W.3d 529, 533 (Tex. 2023) (citation omitted). Because neither party asserts an actual conflict between Delaware and Texas law, and because there are no material differences between the states' relevant substantive laws, the Court need not choose between Texas and Delaware law. *See Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 813 (5th Cir. 2017) (citation omitted); *R.R. Mgmt. Co. v. CFS La.*

7

*Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005) (citation omitted). The Court's analysis and conclusion below would be the same under either Delaware or Texas law.

### b. Direct Benefits Estoppel

Under Delaware law, "[a] non-signatory can be bound to a[n] [arbitration agreement] under principles of equitable estoppel if the non-signatory has accepted a direct benefit under the agreement." *Fairstead Cap. Mgmt.*, 288 A.3d at 755. Likewise, under Texas law, "a non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes." *Taylor Morrison*, 660 S.W.3d at 533 (quoting *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005)). A plaintiff seeks the benefits of a contract either by suing to enforce the contract or by "deliberately seek[ing] and obtain[ing] substantial benefits from the contract itself."[3] *Id.* (citation omitted). A nonsignatory seeks and obtains benefits from a contract when it "knowingly exploit[s] the contract during the contract's existence," meaning the party knew about the contract and its terms and acted to exploit it. *In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d 283, 291 (5th Cir. 2015) (citation omitted). And the party must have "obtained some benefit under the contract." *Id.* (citation omitted); *see also Fairstead Cap. Mgmt.*, 288 A.3d at 755 (noting that the benefits can be pecuniary or nonpecuniary so long as they are direct and actually received (citations omitted)). "If a nonsignatory seeks the benefits of a contract with an arbitration clause, then the nonsignatory must arbitrate all claims that fall within the scope of that arbitration clause." *Taylor Morrison*, 660 S.W.3d at 533.

Plaintiffs do not contend that they were unaware of the Agreement, nor could they. Trimberger signed the Agreement on behalf of Stratum. Resp. App. 10. RTAE owned Stratum and sold it to OST. Pet. ¶¶ 15, 22. And Trimberger and Ebertowski owned Stratum at the time the

---

[3] Because it is unclear whether Delaware law recognizes the first option—suing to enforce the contract—the Court focuses its analysis only on the second option—seeking and obtaining substantial benefits.

Agreement was signed and are members of RTAE. *Id.* ¶¶ 1, 12-13. Therefore, the Court concludes that Plaintiffs knew about the Agreement and its terms.

Plaintiffs also obtained a direct benefit under the Agreement. According to FOCUS Investment, "Trimberger and Ebertowski benefited directly from the services that FOCUS [Investment] provided under the Agreement" because "[t]he Agreement contemplated the sale of Stratum," and once that sale happened, Trimberger and Ebertowski, as owners of Stratum, "enjoyed a significant financial benefit." Defs.' Br. 6-7. Plaintiffs respond that: (1) FOCUS Investment did not perform as Stratum's exclusive financial advisor as required by the Agreement; (2) only Stratum directly benefited from FOCUS Investment's advisory services under the Agreement; and (3) any benefit from the sale of Stratum resulted directly from a separate Unit Purchase Agreement and not from the Agreement itself or assistance from FOCUS Investment. Resp. 12-14.

As to Plaintiffs' first argument, Plaintiffs themselves allege that FOCUS Investment introduced Stratum to OST and that RTAE sold Stratum to OST "with FOCUS's seller-side involvement" for some amount of money. Pet. 2 & ¶¶ 22-23, 62-63, 73. Plaintiffs' contention that they did not receive the full benefit of the Agreement is unavailing. "[M]erely alleging that a benefit was deficient or outweighed by the negative aspects of the signatory's actions does not mean that no benefit was received." *In re Lloyd's Reg.*, 780 F.3d at 293 (citation omitted); *see also Fla. Chem. Co.*, 262 A.3d at 1091 ("The law does not require a weighing of the relative benefits before binding a non-signatory to a[n] [arbitration agreement]."). Even if the Court assumes that FOCUS Investment's performance was deficient, "that partial performance was still a direct benefit to [Plaintiffs]." *In re Lloyd's Reg.*, 780 F.3d at 292-93.

9

As to Plaintiffs' second and third arguments, Plaintiffs concede that they "ultimately benefitted from the execution and closing of the Unit Purchase Agreement with OST." Resp. 14. But according to Plaintiffs, their benefits from the Agreement at issue were only indirect because they arose out of the separate Unit Purchase Agreement, which was negotiated "without any substantial assistance from FOCUS Investment."[4] *Id.* (emphasis omitted). The Court disagrees. Stratum entered into the Agreement with FOCUS Investment so that FOCUS Investment would serve as its exclusive financial advisor "in connection with a Transaction." Resp. App. 3. The Agreement defines "Transaction" to mean "a sale or other transfer . . . of all or a material interest in any of the assets or securities of [Stratum]." *Id.* at 5 (emphasis omitted). Thus, although the "Transaction" at issue was effectuated by a different agreement, Stratum engaged FOCUS Investment for the purpose of such a sale, and FOCUS Investment was performing under the Agreement when it arranged the sale of Stratum to OST. Plaintiffs accepted a benefit of the Agreement when the company they owned, Stratum, entered into the Unit Purchase Agreement as a direct result of the services provided by FOCUS Investment under the Agreement. *See Fla. Chem. Co.*, 262 A.3d at 1091 (finding that the non-signatory accepted a benefit of an agreement containing an arbitration provision because that agreement led to the execution of a second agreement that provided the non-signatory with a necessary resource). In other words, "[i]t is clear that many benefits flowed directly to [Plaintiffs] when [FOCUS Investment] performed its contract with [Stratum]." *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 519 (5th Cir. 2006).

### c. Unclean Hands

Plaintiffs argue that even if principles of estoppel bind them to the Agreement, FOCUS Investment's unclean hands prevent it from relying on equitable estoppel to compel arbitration.

---

[4] Plaintiffs' argument is belied by the Petition, in which they allege that Defendants "helped negotiate" the terms of the sale to OST. Pet. ¶ 81.

Resp. 15-16. "It is well-settled that a party seeking an equitable remedy must do equity and come to court with clean hands." *Truly v. Austin*, 744 S.W.2d 934, 938 (Tex. 1988) (citation omitted); *see also Am. Healthcare Admin. Servs., Inc. v. Aizen*, 285 A.3d 461, 484 (Del. Ch. 2022) (citation omitted). "A party seeking to invoke this equitable doctrine must show that he has been seriously harmed and the wrong complained of cannot be corrected without applying the doctrine." *LDF Constr., Inc. v. Bryan*, 324 S.W.3d 137, 149 (Tex. App.—Waco 2010, no pet.) (citation omitted). The party claiming unclean hands bears the burden to show that it was injured by unlawful or inequitable conduct. *Cantu v. Guerra & Moore, LLP*, 549 S.W.3d 664, 671 (Tex. App.—San Antonio 2017, pet. denied) (citation omitted).

In support of their argument, Plaintiffs cite evidence in the record allegedly showing that Defendants "secretly negotiated a buy-side agreement with Stratum's counterparty," "secretly . . . negotiated that sell-side clients like Stratum . . . would pay the hefty contingent success fee," and "had secret discussions with Koniag about the transaction." Resp. 15-16. FOCUS Investment counters by pointing to evidence that Shah disclosed the buy-side agreement to Plaintiffs and that there were no secret negotiations. Reply 8-9. Having reviewed the evidence produced by both parties, the Court concludes that Plaintiffs have not adequately demonstrated that FOCUS Investment has unclean hands. Therefore, the unclean hands doctrine poses no obstacle to compelling arbitration.

### D. Dispute Within the Scope of the Agreement

The Court next determines whether the Arbitration Agreement covers Plaintiffs' claims against FOCUS Investment. *Will-Drill*, 352 F.3d at 214 (citation omitted). The Court looks at the language of the Agreement to make this determination. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) ("[I]t is the language of the contract that defines the scope of disputes subject to

arbitration." (citation omitted)). The Agreement's arbitration provision applies to "[a]ny dispute, claim or controversy arising out of or relating to this [Agreement] or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate." Resp. App. 8. This language "is nearly infinitely broad." *Martinez v. Experian Info. Sols., Inc.*, No. 3:24-CV-0744-X, 2024 WL 3906775, at *3 (N.D. Tex. Aug. 22, 2024); *see also PoolRe Ins. Corp.*, 783 F.3d at 262-63 ("Agreements mandating arbitration of disputes that 'relate to' . . . a contract are 'broad arbitration clauses capable of expansive reach.'" (quoting *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998))).

Plaintiffs' breach of fiduciary duty, negligence, and gross negligence claims relate to the Agreement because they are based on FOCUS Investment's alleged deficiencies as Plaintiffs' "exclusive financial advisor," i.e., the role Plaintiffs contracted FOCUS Investment to perform under the Agreement. Pet. ¶¶ 84, 88, 92. And Plaintiffs' fraud, negligent misrepresentation, and equitable fraud claims are based on FOCUS Investment allegedly inducing Plaintiffs to enter the Agreement; therefore, these claims are related to the Agreement. *Id.* ¶¶ 98-100, 105-07; *see JBARM, L.L.P. v. Mad River Post, Inc.*, No. 3:06-CV-2351-L, 2007 WL 9717507, at *3 (N.D. Tex. May 10, 2007) ("Since Plaintiffs claim that they were fraudulently induced into signing the Agreements . . ., these are clearly claims 'relating to' the Agreements." (citation omitted)), *report and recommendation adopted by* 2007 WL 9717508 (N.D. Tex. May 30, 2007). Finally, Plaintiffs' aiding and abetting fraud claim is based on allegations that FOCUS Investment was involved in OST's alleged fraud. *Id.* ¶¶ 111-13. Dealings between FOCUS Investment and OST relate to the Agreement because OST was the buyer FOCUS Investment located in connection with its obligations under the Agreement.

In sum, direct benefits estoppel binds Plaintiffs to the Agreement's arbitration provision. And because all of Plaintiffs' claims fall within the scope of the Agreement, Plaintiffs must arbitrate their claims against FOCUS Investment.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Stay and Compel Arbitration by Special Appearance [ECF No. 5] with respect to FOCUS Investment only. The Court **STAYS** Plaintiffs' claims against FOCUS Investment. *See* 9 U.S.C. § 3.

The Court **DENIES** the Motion with respect to Shah and FOCUS Securities but **STAYS** Plaintiffs' claims against Shah and FOCUS Securities as well. The Fifth Circuit has set forth three requirements for courts to stay proceedings with respect to non-signatories: "1) the arbitrated and litigated disputes must involve the same operative facts; 2) the claims asserted in the arbitration and litigation must be 'inherently inseparable'; and 3) the litigation must have a 'critical impact' on the arbitration." *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343-45 (5th Cir. 2004) (citation omitted); *see also Rainier DSC 1, L.L.C. v. Rainier Cap. Mgmt., L.P.*, 828 F.3d 356, 360 (5th Cir. 2016) (citation omitted). Because the Court concludes that all three requirements are met in this case, the Court stays this case as to Plaintiffs' claims against non-signatories Shah and FOCUS Securities.

It is therefore **ORDERED** that this case is administratively closed pending resolution of the arbitration between Plaintiffs and FOCUS Investment.

**SO ORDERED.**

SIGNED March 10, 2025.

KAREN GREN SCHOLER
**UNITED STATES DISTRICT JUDGE**